THE VILLAGE OF WINTHROP HARBOR, Appellee, *vs.* EMMA
A. GURDES *et al.* Appellants.

*Opinion filed February 20, 1913—Rehearing denied April 2, 1913.*

1. PLATS—*effect where municipality is not in existence at time of dedication.* The acknowledgment and recording of a plat in accordance with the statute constitute a conveyance in fee simple of the title to the streets, alleys and public grounds set apart for public purposes, and where the municipality is not in existence at the time of the dedication, the fee of the streets, alleys and public grounds remains in abeyance, subject to vest in the municipality as soon as it is created.

2. SAME—*acceptance of dedication usually evidenced by using the streets.* Acceptance of a dedication by a municipality is usually evidenced by actually using the streets and alleys and improving and repairing the same.

3. SAME—*effect of conveyance of lots with reference to a plat.* The sale and conveyance of lots according to a plat imply a covenant that the streets and other public places indicated on the plat shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use.

4. SAME—*what does not amount to a revocation of dedication.* Where lots have been sold with reference to a duly acknowledged and recorded plat, the subsequent execution of a trust deed by the proprietor conveying the platted tract with other land, expressly excepting the lots sold by describing them according to the plat, does not amount to a revocation of the dedication of the streets and alleys, and upon the subsequent incorporation of a village embracing the platted tract the title to the streets and alleys vests in such village.

5. ESTOPPEL—*when parties are estopped to claim that default by village in foreclosure suit destroyed public rights in street.* Where a bill to foreclose a trust deed covering a platted tract recognizes the plat, and such plat is also recognized by the decree of sale, and by the master in chancery in selling certain of the property with reference thereto, without any objection by the parties to the foreclosure suit to such recognition, the parties to the foreclosure suit, and those claiming under them, are estopped to claim that the public rights in the streets and alleys shown on the plat were lost because the village had suffered default in the foreclosure suit.

APPEAL from the County Court of Lake county; the Hon. PERRY L. PERSONS, Judge, presiding.

LESLIE A. NEEDHAM, for appellants.

EUGENE M. RUNYARD, and ELAM L. CLARKE, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellee, the village of Winthrop Harbor, filed a petition in the county court of Lake county for a special assessment against certain lots in said village for the cost of a local improvement, consisting of cement sidewalks along a portion of Main street, Green Bay road, Sixth street, Whitney avenue and Fulton avenue. The legal objections filed by appellants were overruled and a hearing was had on the question of benefits, which resulted in a judgment of confirmation. From that judgment this appeal has been perfected.

The only ground urged for reversal is, that the village did not have such title or easement in the streets in question as permitted it to make the improvement, and that no proceedings to acquire such title had proceeded to judgment.

The lands included within the streets and avenues named were in the north-west quarter of section 10, township 46, north, range 12, in Lake county. On January 4, 1900, the Winthrop Harbor and Dock Company owned that quarter section, together with other lands, and on that date said company filed of record in Lake county a plat subdividing its holdings in that county, in which practically the whole of this quarter section was designated as lot 6. On January 20, 1900, the dock company filed for record in Lake county a second plat, whereby said lot 6, being described therein as lot 6 of Winthrop Harbor, was further subdivided into lots, blocks, streets, avenues and alleys. Hereinafter the plat of January 4, 1900, will be referred to as the first plat, and the subdivision of January 20, 1900, will be referred to as the second plat. On that same date, January 20, 1900, ten of the lots designated on the second

plat were conveyed by the dock company to William Kirk and two lots were conveyed to George A. Truesdell. On February 9, 1900, the dock company conveyed two lots designated on the second plat to John Blankley, and on December 13, 1900, conveyed two lots to O. Michelson. Each of these conveyances was made by reference to the second plat. On January 31, 1901, the dock company executed and caused to be recorded a trust deed to William T. Underwood, conveying all of its real estate holdings in Lake county to secure the payment of certain promissory notes. In this trust deed were conveyed lots from 1 to 6, inclusive, according to the first plat, excepting as to said lot 6 certain specified lots in certain specified blocks "in the subdivision of lot 6 recorded January 20, 1900," being the lots theretofore sold by the dock company in reference to the second plat and one additional lot. On August 10, 1901, the final order of incorporation of the village of Winthrop Harbor was entered of record in the county court of Lake county. On July 10, 1902, one of the holders of some of the notes which were secured by the trust deed to Underwood filed her bill of complaint in the circuit court of Lake county to foreclose the liens evidenced by the trust deed, and among others made the village of Winthrop Harbor a defendant. The village defaulted. On April 6, 1903, decree of foreclosure was entered and the real estate described in the trust deed was ordered to be sold. The lands were sold on May 19, 1903, a portion of the lots in said second subdivision being offered by reference to the second plat and so sold to Caroline Roth, and other lots being offered and sold in the same way to Frederick Schrumpf. These lots were located in various blocks of the subdivision of January 20, 1900. All the remainder of the lands described in the trust deed were then sold in a lump to Caroline Roth, the remaining lands of the second subdivision being sold as the remainder of lot 6 of the first plat. On January 15, 1904, Frank H. T. Potter, a judgment creditor

of the dock company, redeemed from the sale of said remainder to Caroline Roth and thereafter secured a sheriff's deed, wherein the property was described as lots 1 to 6, inclusive, according to the first plat, excepting from said lot 6 various specified lots according to the second plat.

The acknowledgment and recording of a plat in accordance with the statute constitutes a conveyance in fee simple of the title to the streets, alleys and grounds set apart for public purposes, and where the municipality is not in existence at the time of the dedication, the fee of the streets, alleys and public grounds remains in abeyance, subject to vest in the corporation as soon as it is created. (*Stevenson* v. *Lewis,* 244 Ill. 147.) Acceptance of the dedication by a municipality is evidenced by actually using the streets and alleys and improving and repairing the same. (*Maywood Co.* v. *Village of Maywood,* 118 Ill. 61; *Lee* v. *Town of Mound Station,* 118 id. 304.) It does not clearly appear from this record whether the village did anything prior to the date of the sheriff's deed to Potter to signify its acceptance of the offer of dedication, but it does appear conclusively that, beginning immediately thereafter, the land designated as streets and alleys on the second plat was used by the village in such various ways as to leave no doubt of the acceptance of the dedication. Some of the streets were graded, cross-walks were maintained, culverts were installed, water mains were placed in the streets and alleys, and electric light wires were carried over them.

It is not contended that the subdivision of January 20, 1900, was not a statutory plat, but appellants insist that the trust deed of January 31, 1901, by the dock company to Underwood, as trustee, six months prior to the incorporation of the village, constituted a revocation by the dock company of any previous dedication of the land. Section 6 of the act in relation to plats provides a method by which a plat may be vacated. That section is as follows: "Any such plat may be vacated by the owner of the premises at

any time before the sale of any lot therein, by a written instrument declaring the same to be vacated, executed, acknowledged or proved, and recorded in like manner as deeds of land; which declaration being duly recorded, shall operate to destroy the force and effect of the recording of the plat so vacated, and to divest all public rights in the streets, alleys and public grounds, and all dedications laid out or described in such plat. When lots have been sold, the plat may be vacated in the manner herein provided by all the owners of lots in such plat joining in the execution of such writing." No attempt was made by the dock company to vacate the second plat in the manner required by the statute. On the contrary, every act of the dock company tended to confirm and ratify the dedication. The sale and conveyance of lots according to a plat imply a covenant that the streets and other public places indicated on the plat shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use. (*Stevenson* v. *Lewis, supra.*) The conveyance to Underwod, as trustee, did not disclose any intention on the part of the dock company to revoke the offer of dedication or to vacate the second plat. While it is true that by that conveyance the first plat was referred to and the property was conveyed in accordance therewith, it is also true that reference was had by this conveyance to the second plat, and the lots excepted from that deed were designated and described according to the second plat.

Appellants contend that while this reference is made to the second plat in the trust deed, the land was, in fact, conveyed by that deed with reference to the first plat, and that reference was had to the second plat merely for the purpose of designating the lots excepted with sufficient accuracy to enable them to be located. The second plat was nevertheless recognized in the trust deed by the dock company. In the bill for foreclosure the same recognition was given the subdivision, in the decree of sale many lots in

addition to those excepted in the trust deed were excepted and were designated in accordance with the second plat, and at the foreclosure sale the land in this subdivision was offered by lots and blocks by reference to the second plat. Nowhere by its conduct or by any act did the dock company or its privies attempt to revoke the offer of dedication or to vacate the second plat. The offer of dedication being still open at the time of the incorporation of the village, its acceptance thereafter of the streets and alleys designated in the plat completed the dedication. It is conceded that since the year 1904 property in the second subdivision has been taxed as lots and blocks as described in that plat.

Appellants contend that by the default of the village in the foreclosure proceedings and the decree of the court finding that the bill was taken as confessed by the village and that its rights were subject and subordinate to the lien of the complainant in that suit, the public was deprived of its rights in the streets and alleys. Under the circumstances shown and the various steps taken in the foreclosure proceedings it will not be necessary to consider the effect of the default. As has been stated, the trust deed, the bill for foreclosure and the decree of sale all recognized the second plat and described certain portions of the property involved by reference thereto. At the master's sale the lands included in the tract designated as lot 6 by the first plat were first offered for sale as the lots and blocks specified in the second plat, and a number of lots were so sold to Mrs. Roth and Schrumpf. It would create a very anomalous situation to hold that the master sold certain lots to Mrs. Roth and Schrumpf according to the second plat, and then sold the remainder of the lands in the second subdivision in a lump, together with the other lands involved, to Mrs. Roth according to the first plat and without any reference whatever to the second plat. No exceptions were filed to the master's report of sale by any party interested, and the master's deeds were finally executed and the vari-

ous tracts conveyed by the same descriptions under which they were sold. Having failed to object to the action of the master in selling the lands included in the second plat by reference thereto, the parties to the foreclosure suit, and all those claiming under or through them, are bound by the act of the master in recognizing the second plat, and are now estopped to assert that the rights of the public in these streets and alleys have been lost by reason of the default of the city in that suit.

The title to the streets in question is in the village of Winthrop Harbor, and the judgment of the county court is affirmed.

*Judgment affirmed.*